# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 04-M-2330

UNITED STATES OF AMERICA,

      Plaintiff,

v.

THORO PRODUCTS COMPANY,

      Defendant/Third Party Plaintiff,

v.

GREAT WESTERN INORGANICS, INC.,
HIGHWAY 72 PROPERTIES, INC.

      Third Party Defendants.

---

## CONSENT DECREE

---

# TABLE OF CONTENTS

BACKGROUND..........................................................................................................1
JURISDICTION ......................................................................................................2
PARTIES BOUND...................................................................................................2
DEFINITIONS ........................................................................................................2
STATEMENT OF PURPOSE..................................................................................5
PAYMENT OF RESPONSE COSTS .....................................................................5
FAILURE TO COMPLY WITH CONSENT DECREE...........................................6
RELEASE OF NOTICE OF FEDERAL LIEN .......................................................8
ADDITIONAL ACTIVITIES AFFECTING THE PROPERTY ..............................8
COVENANT NOT TO SUE BY UNITED STATES..............................................10
RESERVATIONS OF RIGHTS BY UNITED STATES .......................................10
COVENANT NOT TO SUE BY SETTLING DEFENDANT ................................11
EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION.........................12
NOTICE TO SUCCESSORS-IN-TITLE..............................................................13
SITE ACCESS AND INSTITUTIONAL CONTROLS .........................................14
ACCESS TO INFORMATION..............................................................................15
RETENTION OF RECORDS AND CERTIFICATION ........................................16
DISPUTE RESOLUTION ....................................................................................17
NOTICES AND SUBMISSIONS .........................................................................19
MODIFICATION..................................................................................................20
RETENTION OF JURISDICTION ......................................................................20
INTEGRATION/APPENDICES...........................................................................20
LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ...........................21
SIGNATORIES/SERVICE ...................................................................................21
FINAL JUDGMENT.............................................................................................21

# I. BACKGROUND

A.     The United States of America ("United States") filed a complaint in this matter pursuant to Sections 104, 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9604, 9606 and 9607, as amended ("CERCLA"), seeking access, injunctive relief and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken by the Administrator of the United States Environmental Protection Agency ("EPA"), at or in connection with the release or threatened release of hazardous substances at the Rocky Flats Industrial Park Site in Jefferson County, Colorado ("the Site").

B.     Defendant Thoro Products Company ("Thoro") filed an answer, asserted counterclaims against the United States and asserted third party claims against Third Party Defendants Great Western Inorganics, Inc. ("GWI") and Highway 72 Properties, Inc.

C.     In entering into this Consent Decree, Thoro does not admit any liability to the United States arising out of the transactions or occurrences alleged in the complaint. It is Thoro's position that it is entering into this Consent Decree as a contiguous property owner pursuant to Section 107(q) of CERCLA, 42 U.S.C. § 9607(q). Further, Thoro does not acknowledge that any release or threat of release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health, welfare or the environment. The United States and EPA do not admit any liability arising out of the transactions or occurrences alleged in the counterclaims asserted by Thoro.

D.     In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and may undertake additional response actions in the future.

E.     In performing response actions at the Site, EPA has incurred response costs and will incur additional response costs in the future.

F.     The United States alleges that Thoro is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Site.

G.     The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site. Based upon this Financial Information and Insurance Information, and Settling Defendant's certification in Paragraph 42, the United States has determined that Settling Defendant has a limited ability to pay for response costs incurred and to be incurred at the Site.

The United States and Thoro agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying amended complaint in this action, Settling Defendant waives all objections and defenses it may have to jurisdiction of the Court or to venue in this District. The Parties shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree is binding upon the United States and upon Settling Defendant and its successors and assigns and any successor in interest to any property within the boundaries of the Site owned by Settling Defendant. Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of the Parties under this Consent Decree.

## IV. DEFINITIONS

3. Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq*.

b. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

c. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

2

e.      "Effective Date" shall mean the date of entry of this Consent Decree by the Court.

f.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

g.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

h.      "Existing Contamination and Known Conditions" shall mean the conditions at the Site known to EPA as of the date of execution of this Consent Decree referenced in the Removal Action documents, any data, information or documents referenced within the Removal Action documents, and any data, information or documents collected pursuant to those Removal Action documents.

i.      "Financial Information" shall mean those financial documents Settling Defendant submitted to EPA in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e), and 40 CFR § 2.203 (b).

j.      "Insurance Information" shall mean those insurance documents Settling Defendant submitted to EPA in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e), and 40 C.F.R. § 2.203 (b).

k.      "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

l.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

m.      "Parties" shall mean the United States and Settling Defendant.

n.      "Plaintiff" shall mean the United States.

o.      "Removal Action" shall mean, as applicable, the CERCLA removal actions referenced in the following documents: (1) the Site Data Characterization and Interpretive Report dated July 16, 1999; (2) the Baseline Ecological and Human Health Risk Assessment dated February 2000; (3) the September 25, 2000 Action Memoranda for the AERRCO and Thoro facilities and for the Great Western Inorganics, Inc. facility at the Rocky Flats Industrial Park Site and any addenda or amendments thereto ("Action Memoranda"); (4) the Engineering Evaluation/Cost Analysis for the Removal Actions dated June 12, 2000 and any addenda or

amendments thereto ("EE/CA"); (5) the Administrative Order on Consent for Removal Action dated September 29, 2000 and any addenda or amendments thereto; (6) the Final Basis of Design Report dated April 12, 2004 and any addenda or amendments thereto; (7) March 26, 2002 Consent Decree between EPA and Great Western Inorganics, Inc. and any addenda or amendments thereto; and (8) the Consent for Access to Property, Thoro Products Company executed on June 5, 2007. The United States agrees that the removal actions specified in these documents and agreements are intended to meet the criteria for removal actions identified in CERCLA § 101(23), 42 U.S.C. § 9601(23), and 40 C.F.R. § 300.1 et seq.

p.     "Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that EPA or DOJ on behalf of EPA (i) has paid at or in connection with the Site through the Effective Date of this Consent Decree plus accrued Interest on all such costs through such date and/or (ii) will accrue at or in connection with the Site after the Effective Date of this Consent Decree plus any Interest that may accrue on any such costs.

q.     "Rocky Flats Industrial Park Site Special Account" shall mean the special account (#08100E), within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

r.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

s.     "Settling Defendant" shall mean Thoro Products Company and Richard E. Newman, as President of Thoro Products Company, and their respective successors and assigns and any successor in interest to any property within the boundaries of the Site owned by Settling Defendant.

t.     "Site" shall mean the Rocky Flats Industrial Park Superfund site located along Colorado Highway 72 in the 17,000 block approximately 2 miles east of the intersection of Colorado Highways 93 and 72, in Section 23, Township 2N, Range 70W. The Site is generally depicted more clearly on the map included in Appendix A and the contiguous adjacent areas where hazardous substances have come to be located.

u.     "Tract 6" shall mean that portion of the Site with the legal description of "Lot 6, Rocky Flats Industrial District, Filing No. 1, County of Jefferson, State of Colorado," as recorded by the Jefferson County Clerk and Recorder at Reception No. 612604.

v.     "Tract 7" shall mean that portion of the Site with the legal description of "Lot 7, Rocky Flats Industrial District, Filing No. 1, County of Jefferson, State of Colorado," as recorded by the Jefferson County Clerk and Recorder at Reception No. 619890.

w.     "Thoro Property" shall mean Tract 6 and Tract 7, collectively.

x.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## V. **STATEMENT OF PURPOSE**

4.    By entering into this Consent Decree the mutual objective of the Parties is for Settling Defendant to resolve its alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607 as provided in the Covenant Not to Sue by Plaintiff in Section X, and subject to the Reservation of Rights by United States in Section XI.

## VI. **PAYMENT OF RESPONSE COSTS**

5.    <u>Payment of Response Costs</u>.  Within 60 days after entry of this Consent Decree, Settling Defendant shall pay the total sum of Six Hundred Thousand Dollars ($600,000.00) as set forth in Paragraph 6 through 8.

6.    Payment to EPA of Five Hundred Seventy-Three Thousand and Three Hundred and Fifty-Five Dollars and Fifty-Four Cents ($573,355.54), as a portion of the Six Hundred Thousand Dollar ($600,000.00) payment referenced in Paragraph 5, shall be made by certified check or checks or cashier's check or checks made payable to "U.S. Department of Justice," referencing the name and address of the party making payment, the Site Name ("RFIP Site"), the EPA Region and Site Spill ID Number <u>#08-10; OU00</u>, DOJ Case Number <u>90-11-3-1719/7</u>, and the Civil Action Number <u>04-M-2330</u>. Settling Defendant shall send the check to:

> Financial Litigation Unit
> U.S. Attorneys Office
> Seventeenth Street Plaza
> 1225    Seventeenth St., Suite 700
> Denver, CO  80202

7.    At the time of payment to EPA of the Five Hundred Seventy-Three Thousand and Three Hundred and Fifty-Five Dollars and Fifty-Four Cents ($573,355.54) referenced in Paragraph 6, Settling Defendant shall also send notice to EPA and DOJ that payment has been made in accordance with Section XX (Notices and Submissions).  Such notice shall reference the Site Name ("RFIP Site"), the EPA Region and Site Spill ID Number  <u>#08-10; OU00</u>, DOJ Case Number <u>90-11-3-1719/7</u>, and the Civil Action Number <u>04-M-2330</u>.

8.    Repayment of Account.  Within 60 days after entry of this Consent Decree, Settling Defendant shall deposit Twenty-Six Thousand and Six Hundred and Forty-Four Dollars and Forty-Six Cents ($26,644.46) which is the balance of the Six Hundred Thousand Dollar ($600,000.00) settlement payment referenced in Paragraph 5, in the trust account established by Settling Defendant and the Colorado Department of Public Health and the Environment ("CDPHE") (held at the JP Morgan Chase, N.A. Bank, ABA: 021000021, Account Number 980401787, Credit Trust

Account Number 1015039010 and Account Name: Thoro Products Co.) (the "Trust Account") for purpose of implementing closure activities at Settling Defendant's former waste storage facility located on a portion of the Site.

a. With respect to the payment referenced in Paragraph 8, Settling Defendant shall contact Krista Botsford at J.P. Morgan Chase, N.A. Bank (248) 738-6193 on the date that this deposit is made. Settling Defendant shall provide notice of this deposit to EPA and DOJ in accordance with Section XX (Notices and Submissions). Such notice shall reference the Site Name (RFIP Site), the EPA Region and Site Spill ID Number #08-10; OU00, DOJ Case Number 90-11-3-1719/7, and the Civil Action Number 04-M-2330.

b. If Settling Defendant is prevented from depositing the $26,644.46 into the Trust Account referenced in Paragraph 8, Settling Defendant may invoke the Dispute Resolution procedures under Section XVIII of this Consent Decree to address the payment referenced in Paragraph 8.

9. The total amount to be paid pursuant to Paragraph 6 shall be deposited in the Rocky Flats Industrial Park Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII. FAILURE TO COMPLY WITH CONSENT DECREE

10. <u>Interest on Late Payments</u>. If Settling Defendant fails to make any payment required by Paragraph 6 (Payment of Response Costs) by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

11. <u>Stipulated Penalties</u>. Subject to the provisions of Section XVIII (Dispute Resolution),

a. If any amounts due under Paragraph 6 are not paid by the required date, Settling Defendant shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, $1,000 per violation per day that such payment is late.

b. If Settling Defendant does not comply with any other requirement or obligation of this Consent Decree, including the provisions in Section XV (Site Access and Institutional Controls), Settling Defendant shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, $500 per violation per day of such noncompliance.

c. Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the

check, shall reference the name and address of the Settling Defendant, the Site Name ("RFIP Site"), the EPA Region and Site Spill ID Number #08-10; OU00, DOJ Case Number 90-11-3-1719/7, and the Civil Action Number 04-M-2330. Settling Defendant shall send the check (and any accompanying letter) to:

> United States Environmental Protection Agency
> Fines and Penalties
> Cincinnati Finance Center
> P.O. Box 979077
> St. Louis, MO 63197-9000

    d.    At the time of each payment, Settling Defendant shall also send notice that payment has been made to EPA and DOJ in accordance with Paragraph 7.

    e.    Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

12.    If Settling Defendant is prevented from depositing the $26,644.46 into the Trust Account referenced in Paragraph 8, Settling Defendant's failure to comply with the requirements or obligations of Paragraph 8 of this Consent Decree: (i) shall not constitute a violation of this Consent Decree; (ii) shall not constitute non-performance by Settling Defendant of its obligations under this Consent Decree; and (iii) shall not provide a basis for stipulated penalties described in Paragraph 11.b; provided that Settling Defendant invokes dispute resolution

13.    Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree

14.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties by Settling Defendant shall not excuse Settling Defendant from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

## VIII. RELEASE OF NOTICE OF FEDERAL LIEN

15.    Within 30 days after (i) EPA receives the payment required by Paragraph 6, (ii) EPA receives the filed-stamped copy of the recorded "Environmental Use Covenant for Tract 6

and Tract 7," and (iii) Thoro completes its obligation to deposit the $26,644.46 into the Trust Account required by paragraph 8, or an agreement is reached in dispute resolution, whichever occurs later, EPA shall file a Release of Notice of Federal Lien in the Recorder's Office, Jefferson County, State of Colorado. The Release of Notice of Federal Lien shall release the Notice of Federal Lien filed on December 14, 1990 at reception no. 90105618 in Jefferson County, Colorado. At the time of filing, EPA shall also send notice to Settling Defendant that the filing of the Release of Notice of Federal Lien, together with a copy of the executed Release of Notice of Federal Lien, has been made in accordance with Section XX (Notices and Submissions).

## IX. **ADDITIONAL ACTIVITIES AFFECTING THE PROPERTY**

16. Consistent with Paragraph 34 below, EPA's designee (GWI) or EPA upon its designee's failure to do so shall:

      a. On Tract 7, (i) remove and dispose of the existing air stripper system (including all structures, sump pump and piping) and the existing seep collection piping and underground non-earthen collection structures, (ii) disrupt the existing underground gravel trenches sufficiently to disburse channelized seep flow, (iii) thoroughly mix remaining trench materials and other media associated with the existing seep collection system with other clean soils, and (iv) backfill any excavations and re-grade to the contour existing prior to the excavation within one year of the Effective Date of the Consent Decree.

      b. On Tract 6 and Tract 7, remove all of EPA's groundwater monitoring wells within three years of the Effective Date of the Consent Decree, unless the AS/SVE system operates for a longer period of time, in that event, the groundwater monitoring wells will be removed within 180 days (weather permitting) of the EPA written notice that the AS/SVE system Removal Action is complete. Groundwater monitoring wells will be abandoned in accordance with the State of Colorado Office of the State Engineer well abandonment regulations Rule 16. Standards for Plugging, Sealing, and Abandoning Wells and Boreholes.

17. Consistent with Paragraph 34 below and the Administrative Order on Consent for Removal Action (U.S. EPA Region VIII, Docket No. CERCLA-8-2000-20) dated September 29, 2000, EPA's designee (the Thoro/PRP Group), shall remove the existing air sparge/soil vapor extraction ("AS/SVE") system on Tract 6 (including all air sparge wells, soil vapor extraction wells, other structures and piping) in accordance with paragraphs 7.B. and 7.C. of the Consent for Access to Property for Tract 6, Thoro Products Company executed on June 5, 2007 (Appendix B to this Consent Decree) within 6 months following EPA's written notice that the AS/SVE system Removal Action on Tract 6 is complete.

18. If within one year of the Effective Date, Settling Defendant notifies EPA in writing that it intends to use one or more monitoring wells on the Thoro Property for anything other than the EPA approved removal actions as identified in the Removal Action documents, then EPA, or GWI at EPA's direction, will no longer be obligated under Paragraph 16 to close the monitoring well(s) identified by Settling Defendant.

19.     The parties performing work under the 2002 Consent Decree between the United States and Great Western Inorganics, 02-N-0604, as may be amended, and the parties performing work under the 2000 Administrative Order on Consent, VIII-2000-20, as may be amended, will continue to perform required Removal Actions on the Thoro Property as identified in the Removal Action documents.  Settling Defendant is not obligated to do the work required of the parties performing work pursuant to the 2002 Consent Decree and the 2000 Administrative Order on Consent.

20.     Settling Defendant and/or GWI may submit additional pilot studies, data and/or other information regarding the Site.  If Settling Defendant and/or GWI submit this information within two years of the Effective Date of this Consent Decree, EPA shall review the additional pilot studies, data and/or other information to determine, pursuant to the Superfund process, whether any additional Superfund removal actions are necessary to address potentially migrating contaminated groundwater from the Site as further described in Paragraph 20(c-d).  EPA's commitment to complete this assessment will be enforceable under this Consent Decree; however Settling Defendant waives the right to challenge EPA's determination judicially or through the Dispute Resolution procedures as set forth in Section XVIII.

a.     Settling Defendant shall provide EPA with any and all information (including summary reports) from the pilot tests, bench tests and any other studies or validated data it wants EPA to consider for this determination within two years of the Effective Date of this Consent Decree.  EPA will complete its assessment within four years from the Effective Date of this Consent Decree.

b.     Quality Assurance and Sampling.  Settling Defendant shall prepare a Sampling and Analysis Plan (SAP) as well as a Quality Assurance Project Plan (QAPP) in accordance with EPA's "Guidance for Quality Assurance Project Plans EPA" QA/G-5, EPA/240/R-02/009. This SAP and QAPP shall be submitted to EPA along with any data provided. Settling Defendant shall insure that all sampling and analyses performed pursuant to this Consent Decree shall conform to EPA guidance regarding sampling, quality assurance/quality control ("QA/QC"), data validation, and chain of custody procedures. Settling Defendants shall ensure that the laboratory used to perform the analyses participates in a QA/QC program that complies with the appropriate EPA guidance.

c.     EPA will provide written notice to Settling Defendant and GWI of the final determination of EPA's assessment and will identify or provide the documentation supporting the determination.

d.     EPA's agreement to consider information provided by Settling Defendant and/or GWI and also consider other information gathered by EPA in order to independently determine whether any additional removal actions are necessary to address groundwater contamination at the Site is contingent on the final entry of the Consent Decree in this Court.  If

determine whether any additional removal actions are necessary to address groundwater contamination at the Site is contingent on the final entry of the Consent Decree in this Court. If Settling Defendant fails to follow the QA/QC procedures and/or does not have the data validated, EPA will give the appropriate weight to the data collected not in accordance with the QA/QC procedures and the non-validated data. If EPA determines that additional Superfund removal actions are necessary pursuant to the factors identified in the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.1 et seq. (the "NCP"), as well as the factors found in various statutes, guidance, regulations and policies used by EPA to make this determination, EPA will prepare the documentation required by the NCP to describe the additional Superfund removal actions. In the event that EPA determines that no additional Superfund removal actions are necessary, the basis for EPA's determination will be reflected in the relevant Superfund documentation.

## X. <u>COVENANT NOT TO SUE BY THE UNITED STATES</u>

21.     Except as specifically provided in Section XI (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to the Site.

      a.     With respect to present and future liability, this covenant shall take effect upon receipt by EPA of all amounts required by Paragraph 6 (Payment of Response Costs) and any amount due under Section VII (Failure to Comply with Consent Decree), and upon satisfactory performance by Settling Defendant of its obligations under this Consent Decree.

      b.     This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

## XI. <u>RESERVATIONS OF RIGHTS BY UNITED STATES</u>

22.     The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 21. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Setting Defendant with respect to:

      a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

      b.     criminal liability;

      c.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments except any natural resource damage assessments performed by EPA at the Site;

d.     liability based on Settling Defendant's ownership or operation of the Site, or upon transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of a hazardous substance or a solid waste to the Site unless authorized by law, exclusive of Existing Contamination and Known Conditions, and solely occurring after signature of this Consent Decree by Settling Defendant; and

e.     liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant on any property other than the Site.

23.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the certification made by Settling Defendant in Paragraph 42 is materially false, incomplete, or inaccurate.

## XII. <u>COVENANT NOT TO SUE BY SETTLING DEFENDANT</u>

24.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law, for Response Costs incurred by Settling Defendant at the Site;

b.     any claim arising out of the response actions at or in connection with the Site, including any claim under the United States Constitution, the Constitution of the State of Colorado, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law;

c.     any claim against the United States pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, relating to the Site; and

d.     any direct or indirect claim for disbursement from the Rocky Flats Industrial Park Special Account.

These covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 22 (c)-(e), but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

25. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

26. The eight counterclaims brought by Settling Defendant against the United States in "Thoro's Amended Answer, Counterclaim and Third-Party Complaint" filed on March 14, 2005 in this matter, civil action number 04-2330 are hereby dismissed with prejudice.

## XIII.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

27. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. The Parties expressly reserve any and all rights, defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a party hereto. The Parties agree that the contribution protection provided in Paragraph 28 below shall not apply to any claims or causes of action (including claims for contribution under CERCLA) that Settling Defendant has or may have against any third-party providing a contract of indemnification or insurance.

28. The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA or as otherwise provided by law for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all payments made to the United States and response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person provided, however, that if the United States exercises rights under the reservations in Paragraph 22 the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

29. Settling Defendant also agrees that, with respect to any suit or claim brought against it for matters related to this Consent Decree, Settling Defendant will notify EPA and DOJ in writing within 10 days of service of the complaint or claim upon it. In addition, Settling Defendant shall notify EPA and DOJ within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

30. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding

were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by the United States set forth in Section X.

## XIV. NOTICE TO SUCCESSORS-IN-TITLE

31.     With respect to any property owned or controlled by Settling Defendant that is located within the Site, within 15 days after the entry of this Consent Decree, Settling Defendant shall submit to EPA for review and approval a notice to be filed with the Recorder's Office, Jefferson County, Colorado, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA is conducting a removal action on the Site, and that Settling Defendant has entered into a Consent Decree requiring site access and the recording of institutional controls on Tracts 6 and 7 and in the same form as attached hereto as Appendix C, the Notice and Environmental Use Covenants. Such notice shall identify the United States District Court in which this Consent Decree with Settling Defendant was filed, the name and civil action number of the case, and the date the Consent Decree was entered by the Court. Settling Defendant has previously recorded an Environmental Use Covenant in June 2007 affecting Tract 6 which the Parties agree shall be terminated coincident with the recording of the Environmental Use Covenant for Tract 6 referenced above as outlined in Appendix C. Settling Defendant shall record the notice(s) within 10 days of EPA's approval of the notice(s). Settling Defendant shall provide EPA with a certified copy of the recorded notice(s) within 10 days of recording such notice.

32.     At least 30 days prior to the conveyance of any new interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, Settling Defendant owning the property shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section XV (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "the restrictive covenants") pursuant to Section XV (Site Access and Institutional Controls). At least 30 days prior to such conveyance, Settling Defendant shall also give written notice to EPA of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

33.     In the event of any such conveyance, the grantee shall be obligated to provide access and abide by the institutional controls, pursuant to Section XV (Access and Institutional Controls) of this Consent Decree. In no event shall the conveyance release or otherwise affect the liability of Settling Defendant to comply with all provisions of this Consent Decree with respect to any other property owned or controlled by Settling Defendant that is located within the Site, absent the prior written consent of EPA.

13

## XV. SITE ACCESS AND INSTITUTIONAL CONTROLS

34.     With respect to Tract 6, Settling Defendant has previously granted to EPA and its contractors access to complete the remedy identified in the Removal Action documents for Tract 6. The Parties expressly incorporate by reference the Consent for Access to Property to Property in Appendix B, attached hereto as "Appendix B." In addition, Settling Defendant previously recorded an Environmental Use Covenant which expires at the completion of the Tract 6 remedy. The previously recorded Environmental Use Covenant affecting Tract 6 shall be terminated coincident with the recording of the Environmental Use Covenant for Tract 6 referenced in Appendix C. Settling Defendant shall simultaneously record a new Environmental Use Covenant for Tract 6 substantially in the form attached hereto as "Appendix C." Commencing from the date of lodging of this Consent Decree Settling Defendant shall provide access to the Site, at all reasonable times to the United States and its representatives, including EPA and its designees:

a.     performing and/or overseeing the work on Tract 7 which includes (i) removing and disposing of the existing air stripper system (including all structures, sump pump and piping) and the existing seep collection piping and underground non-earthen collection structures, (ii) disrupting the existing underground gravel trenches sufficiently to disburse channelized seep flow, (iii) thoroughly mixing remaining trench materials and other media associated with the existing seep collection system with other clean soils, and (iv) backfilling any excavations and re-grading to the contour existing prior to the excavation within one year of the Effective Date of the Consent Decree.

b.     removing all of EPA's groundwater monitoring wells on Tract 6 and Tract 7 within three years of the Effective Date of the Consent Decree, unless the AS/SVE system operates for a longer period of time, in that event, the groundwater monitoring wells will be removed within 180 days (weather permitting) of the EPA written notice that the AS/SVE system Removal Action is complete. Groundwater monitoring wells will be abandoned in accordance with the State of Colorado Office of the State Engineer well abandonment regulations Rule 16. Standards for Plugging, Sealing, and Abandoning Wells and Boreholes.

c.     overseeing the removal of the existing air sparge/soil vapor extraction ("AS/SVE") system (including all air sparge wells, soil vapor extraction wells, other structures and piping) on Tract 6 in accordance with paragraphs 7.B. and 7.C. of the Consent for Access to Property for Tract 6, Thoro Products Company, executed on June 5, (Appendix B to this Consent Decree) within 6 months following EPA's written notice that the AS/SVE system Removal Action on Tract 6 is complete;

d.     Verifying any data or information submitted to the United States by Settling Defendant;

e.    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XVI (Access to Information);

f.    Assessing Settling Defendant's compliance with this Consent Decree; and

g.    Determining whether the Thoro Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree and the Environmental Use Covenant for Tract 6 and Tract 7 in "Appendix C."

As applicable, the United States and its representatives, including EPA and its contractors, shall provide Settling Defendant at least 72 hours advance notice prior to entry in accordance with Section XIX (Notices and Submissions) except to the extent that EPA reserves its access authority under CERCLA Section 104 where there may be an imminent hazard.

35.    Commencing on the date of lodging of this Consent Decree, Settling Defendant shall refrain from using the Thoro Property in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the EPA approved Removal Actions performed at the Thoro Property as identified in the Removal Action documents consistent with the Environmental Use Covenants attached hereto as "Appendix C."

36.    Within 10 days of the Effective Date of this Consent Decree, Settling Defendant shall record the Environmental Use Covenant for Tract 7 in the same form as attached hereto as "Appendix C." Settling Defendant shall provide EPA with a file-stamped copy of the recorded Environmental Use Covenant for Tract 7.

37.    Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XVI. ACCESS TO INFORMATION

38.    Settling Defendant has previously provided to EPA, and upon request shall supplement such production with, copies of all records, reports, or information (hereinafter referred to as "records") within their possession or control relating to activities at the Thoro Property or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Thoro Property.

39. <u>Confidential Business Information and Privileged Documents</u>.

a. Settling Defendant has previously asserted and may prospectively assert business confidentiality claims covering part or all of the records previously and/or prospectively submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Records determined to be confidential by EPA will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records when they are prospectively submitted to EPA or if EPA has notified Settling Defendant that the records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, and Settling Defendant has failed to exercise its rights under 40 C.F.R. Part 2, the public may be given access to such records without further notice to Settling Defendant.

b. Settling Defendant has asserted and may assert prospectively that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege prospectively in lieu of providing records, it shall provide the United States with the following: 1) the title of the record; 2) the date of the record; 3) the name, title, affiliation (*e.g.*, company or firm), and address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted and why that privilege is applicable. If a claim of privilege applies only to a portion of a record, the record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendant shall retain all records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor. However, no records created or generated pursuant to the requirements of this Consent Decree or any other settlement with EPA pertaining to the Site shall be withheld on the grounds that they are privileged.

40. No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other records evidencing conditions at or around the Site.

## XVII. <u>RETENTION OF RECORDS AND CERTIFICATION</u>

41. Until 5 years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary. .

42. Consistent with its prior submittals of Financial Information and Insurance Information pursuant to Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e), Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.     not altered, mutilated, discarded, destroyed, withheld or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site since notification of potential liability by the United States or the filing of suit against it regarding the Site, and that it has fully complied with any and all EPA requests for information regarding the Site and Thoro's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927;

b.     submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the time Settling Defendant executes this Consent Decree; and

c.     fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site.

## XVIII.  DISPUTE RESOLUTION

43.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures described in this Section shall be the exclusive mechanism to resolve disputes arising between EPA and Settling Defendant arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by either party to enforce obligations of the other party that have not been disputed in accordance with this Section.   With respect to Settling Defendant, EPA's determination whether any additional Superfund removal actions are necessary to address the groundwater contamination under Section IX (Additional Activities Affecting the Site) is not subject to dispute resolution under the Consent Decree and is not subject to pre-enforcement judicial review and is not a final agency action.

44.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Section.   For purposes of this Section, the adequacy of any response action includes, without limitation: the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and the adequacy of the performance of response actions taken pursuant to this Consent Decree.

45.     Informal Dispute Resolution.  Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 30 days from the time the dispute arises, unless it is modified by written agreement of the Parties to the dispute.  The dispute shall be considered to have arisen upon receipt by EPA (in the case of a dispute initiated by

the Settling Defendant), or by Settling Defendant (in the case of a dispute initiated by EPA) of a written Notice of Dispute.

46. <u>Formal Dispute Resolution</u>.

a. In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States through the Assistant Regional Administrator for the Office of Environmental Compliance and Environmental Justice, EPA Region 8, a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant.

b. Within 21 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. Within 14 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c. Following receipt of all statements of position submitted pursuant to Paragraphs a. and b., an EPA Program Director or higher at EPA Region 8, will issue a final decision resolving the dispute. The Director's decision shall be binding on Settling Defendant unless, within 10 days of receipt of the decision, Settling Defendant files with the Court and serves on the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion. Judicial review of any dispute under this Consent Decree (except for disputes regarding EPA's final determination made pursuant to Section IX) shall be governed by applicable principles of law.

47. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Paragraph 11. In the event Settling Defendant prevails on the disputed issue, any accrued stipulated penalties shall be withdrawn.

# XIX. NOTICES AND SUBMISSIONS

48.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, or a request for modification is made pursuant to Section XX, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ #90-11-3-1719/3 and DJ #90-11-3-1719/7)
P.O. Box 7611
Washington, D.C. 20044-7611

As to EPA:

Steven Moores
Regional Attorney
USEPA Region 8
1595 Wynkoop St.
Mail Code: 8ENF-L
Denver, CO 80202-1129
        Attn: RFIP Site

Christina Progess
Remedial Project Manager
USEPA Region 8
1595 Wynkoop St.
Mail Code: 8EPR-SR
Denver, CO 80202-1129
        Attn: RFIP Site

As to Settling Defendant:

Thoro Products Company
c/o Christopher J. Sutton, Esq.
Perkins Coie LLP
1899 Wynkoop St., Ste. 700
Denver, CO 80202-1043

## XX. MODIFICATION

49.     Schedules specified in this Consent Decree for completion of the work may be modified by agreement between EPA and Settling Defendant. All such modifications shall be made in writing.

50.     No material modifications shall be made to this Consent Decree without written notification to and approval of the United States, Settling Defendant, and the Court. Modifications to the Appendices to this Consent Decree that do not materially alter those documents may be made by written agreement between EPA and Settling Defendant.

51.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXI. RETENTION OF JURISDICTION

52.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XXII. INTEGRATION/APPENDICES

53.     This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

> "Appendix A" is a Map of the Site
> "Appendix B" is the June 2007 Consent for Access to Tract 6
> "Appendix C" is the Notice, the Environmental Use Covenant for Tract 6 and the Environmental Use Covenant for Tract 7.

## XXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

54.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

55.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIV. SIGNATORIES/SERVICE

56.     Undersigned representative of the Settling Defendant to this Consent Decree and the Environmental Enforcement Section Deputy Section Chief for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such party to this document.

57.     Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

58.     Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendant need not file an Amended answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXV. FINAL JUDGMENT

59.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __12th__ DAY OF __May__, 2010.

United States District Judge Richard Matsch

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States of America v. Thoro Products Company*, Civil Action No. 04-M-2330, relating to the Rocky Flats Industrial Park Superfund Site.

FOR THE UNITED STATES OF AMERICA

DATE: 12/17/09

Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

DATE: 11-23-09

Cara M. Mroczek
Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

David M. Gaouette
United States Attorney

DATE: _____

Stephen Taylor
Assistant United States Attorney
1225 17th Street Suite 700
Denver, CO 80202

23

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 8

DATE: 12/8/09

Kelcey Land
Director, Technical Enforcement Program
Office of Enforcement, Compliance and Environmental
Justice

DATE: 11/18/09

Matthew Cohn
Supervisor, Legal Enforcement Program
Office of Enforcement, Compliance and Environmental
Justice

DATE: 12/4/09

Steven Moores
Assistant Regional Counsel
Office of Enforcement, Compliance and Environmental
Justice

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States of America v. Thoro Products Company*, Civil Action No. 04-M-2330, relating to the Rocky Flats Industrial Park Superfund Site.

FOR DEFENDANT, Thoro Products Company

Date: _11/04/09_

Richard E. Newman
Thoro Products Company
6611 West 58th Place
Arvada, CO 80003-5501

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Christopher J. Sutton, Esq.
Perkins Coie, LLP
1899 Wynkoop St., Ste. 700
Denver, CO 80202-1043

# APPENDIX A

## SITE MAP



Figure ES-2

**On-Site Boundary**
**Rocky Flats Industrial Park**

Boundary

Source: EMSI 1999

# APPENDIX B

## CONSENT TO ACCESS TO TRACT 6

## CONSENT FOR ACCESS TO PROPERTY
## FOR TRACT 6
## THORO PRODUCTS COMPANY

**PROPERTY OWNER:** THORO PRODUCTS COMPANY ("THORO")

**PROPERTY DESCRIPTION:** The following described lot and parcel of land, situated, lying and being in Jefferson County and State of Colorado, described as follows:

### Rocky Flats Industrial District Filing - Tract 6

(Hereinafter, the "Property").

ACCESS AGREEMENT ("Agreement"):

The Property lies within the boundaries of the Rocky Flats Industrial Park ("RFIP") site (the "Site"). The United States Environmental Protection Agency ("EPA") is seeking access from THORO to the Property on behalf of officers, employees, contractors, and authorized representatives of EPA and parties acting on behalf of EPA including, but not limited to, the RFIP Potentially Responsible Parties ("PRP") Administrative Order on Consent ("AOC") Group for purposes of conducting response activities pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA"). The RFIP PRP AOC Group (the "GRANTEES") is comprised of the following entities: Adolph Coors Company, Hamilton Sundstrand Corporation, Zenith Electronics Corporation of Texas and Zenco de Chichuahua, S.A. de C.V.

THORO currently leases the Property to a tenant, Mesa Oil, Inc. (the "Tenant") for storage of equipment and operation of a waste oil recycling business. The GRANTEES and THORO agree that, to the extent reasonably practicable, it is the goal of the GRANTEES and THORO to provide each other advance notice of their respective activities so as to avoid duplication of efforts, to minimize impacts to THORO and to avoid disrupting each others activities at the Property and at the Site. THORO and EPA have agreed to the terms of Institutional Controls affecting the Property. A copy of the Institutional Controls is attached to this Agreement. THORO shall record the Institutional Controls with the Jefferson County Recorder of Deeds within five business days after GRANTEES execute this Agreement.

1.      THORO consents and grants access to EPA and the GRANTEES for the purposes of constructing and overseeing the air sparging and soil vapor extraction ("AS/SVE") system described in two Action Memoranda dated September 25, 2000 (collectively the "Activities"), including:

A.      Installation, operation, maintenance, shut-down and removal of the AS/SVE system on the Property within the approximate areas shown on Figure 1 consistent with the terms of this Access Agreement ("Agreement").

B.      The collection of physical samples of soil, sediments, ground water, surface water, soil vapor or air from the Property, with the GRANTEES providing THORO with an

advanced copy of any new or amendments to the existing (October 15, 2001) work plan or sampling and analytical plan ("SAP") (previously provided to THORO) at least two weeks in advance of such activities. The GRANTEES will provide THORO a receipt or chain of custody form describing the samples obtained. If requested by THORO in advance, a portion of the samples (split) will be provided to THORO at the time of sample collection, assuming that there is sufficient sample media that a split sample can be collected. THORO will be responsible for providing the technicians and/or equipment needed to receive the duplicate samples.

     C.     The surveying, drilling of holes and installation of wells, piping and equipment, with the GRANTEES providing THORO with an advance copy of any new or amendment to the existing work plan at least two weeks in advance of such activities. This includes the surveying, drilling of holes and installation of wells, piping and equipment and sampling for any additional wells that may be necessary for the removal action. To the extent possible, all such wells will be constructed as "flush mount" wells without vertical protrusions. GRANTEES agree to coordinate with THORO in advance to ensure to the extent practicable that wells, piping and equipment for the AS/SVE system are located so as not to unreasonably interfere with THORO activities on the Property. GRANTEES agree to drill and construct one additional well before operation of the AS/SVE system at the location on the Property shown in Figure 1, and which location has been agreed upon and marked in the field by GRANTEES and THORO. GRANTEES shall collect three samples from the new well for analysis of volatile organic compound (VOC) content. The first sample shall be obtained within 60-days of well completion. The additional two samples shall be collected within one year of well completion. At least one of the sampling events for the new well shall coincide with the long-term groundwater sampling program for the Site. GRANTEES shall also collect one sample for VOC analysis from existing well DG-1 located to the east of the RCRA pad at the time the first sample is collected from the new well.

     In addition, THORO has designated a "truck access corridor" shown on Figure 1 to maintain emergency access to the eastern corner of the Property. Any components of the AS/SVE system that need to be installed within the truck access corridor will be placed below the ground surface, without aboveground protrusions.

     It is anticipated that placement of aboveground wells, piping and equipment may be necessary outside the truck access corridor, including on the concrete pad formerly used to store RCRA hazardous waste (Figure 1). To the extent practicable, GRANTEES will install aboveground piping and equipment on the pad within the "AS point/SVE well corridor" shown on Figure 1. GRANTEES agree to coordinate with Tenant and THORO in advance to ensure to the extent practicable that such areas where piping and instrumentation extend aboveground are located so as not to unreasonably interfere with Tenant and THORO activities on the Property. THORO further agrees not to interfere with the installation, operation or monitoring of the AS/SVE system, including parking vehicles or placing materials in areas marked in Figure 1.

     D.     Monitoring and/or investigation activities at the Property.

     E.     Verifying any data or information submitted to or made by EPA.

F. Assessing the need for planning. or implementing the Activities at the Site with the GRANTEES, providing THORO and Tenant with a copy of any work plan for such Activities at least two weeks in advance of such Activities.

2. Notwithstanding any term herein to the contrary. EPA and the GRANTEES acknowledge and agree that in the event the RFIP PRP AOC Group has not approved a plan and schedule for implementation of the AS/SVE system by June 30. 2007. or if physical installation (not site preparation, design or engineering) of the AS/SVE system described in Section 1.A does not commence within 150 days of execution of this Agreement. this Access Agreement shall automatically terminate and EPA and the GRANTEES shall have no further right. title, interest or license to enter the Property under this Agreement.

3. The access granted in Section 1 above shall continue until the Completion of the Activities. As used in this Access Agreement. "Completion of the Activities" shall mean 180 days beyond the date that EPA advises the RFIP PRP AOC Group that it concurs that the AS/SVE termination and shutdown criteria. Attachment A hereto. have been met. The 180 day period referenced in the preceding sentence is to allow GRANTEES sufficient time: (i) to complete decommissioning of the AS/SVE system; (ii) to take appropriate steps to return the Property to its pre-Activities condition described in Section 7 below; and (ii) to complete any follow-up environmental monitoring. Upon Completion of the Activities, this Access Agreement shall automatically terminate and EPA and the GRANTEES shall have no further right. title, interest or license to enter the Property.

4. GRANTEES shall provide THORO and Tenant at least 72 hours advance notice of the initial commencement of the Activities identified in Section 1 above. THORO's designated representatives for purposes of giving notice under this provision are: Christopher J. Sutton, Perkins Coie LLP, attorney for THORO, who shall be provided notice by facsimile at (303) 291-2400 (phone number (303) 291-2312); and Lawrence Meers. Mesa Oil, who shall be provided notice by facsimile at (303) 657-0669 (phone number (303) 426-4777, ext. 11).

5. GRANTEES, liability for the negligent acts. errors, or omissions of its authorized representatives for damages to the Property or injuries to persons or property, which result from, or are caused by, the Activities on the Property shall be to the extent permitted by law.

6. Upon completion of the Activities or within 60 days of generation of waste materials (taking into consideration satellite accumulation time frames where appropriate). whichever is earlier, GRANTEES will promptly remove all trash. any accumulated development water or waste, other investigation derived waste ("IDW") and other waste materials generated by GRANTEES while conducting the Activities so as to reasonably return the Property to the condition it was in at the time GRANTEES entered the Property, provided such cleanup activities are not inconsistent with the Activities conducted pursuant to this Access Agreement. GRANTEES and not THORO or its Tenant, are solely responsible for waste characterization and management in accordance with 40 CFR Parts 260-270. including the state law equivalents to these provisions. GRANTEES agree that no onsite treatment or disposal of hazardous waste will occur at the Property as a result of the Activities.

7.    Upon Completion of the Activities as defined above. GRANTEES agree to:

A.    Completely and timely vacate the Property.

B.    Complete its efforts to remove all wells, piping, equipment and other structures constructed by GRANTEES on the Property at their sole expense to a minimum of 2 feet below ground surface for wells and to a minimum of 6 inches below ground surface for other structures (i.e., concrete slabs, lateral piping, etc.).

C.    Restore the surface conditions and structures of the Property to the conditions that existed at the time GRANTEES entered the Property, to the extent the surface conditions or structures on the Property are altered by the removal actions, and as reasonably practicable.

D.    In accordance with procedures described in Attachment B hereto, GRANTEES shall take appropriate action to ensure to the extent practicable that no residual contamination from the Activities is left on the surface of the concrete pad formerly used to store RCRA hazardous waste following performance of the Activities. GRANTEES agree to provide THORO a letter report certified by a licensed professional engineer documenting that any contamination from the Activities has been removed from the surface of the pad and will include all testing data collected by GRANTEES to make this demonstration. During performance of the Activities by GRANTEES, THORO agrees not to engage in any activities that could contribute to contamination on the surface of the concrete pad. THORO further agrees to notify and request its Tenant not to not to engage in any activities that could contribute to contamination on the surface of the concrete pad.

8.    GRANTEES agree to promptly provide THORO a copy of all data, information, analyses or interpretive reports submitted to EPA as a result of the Activities. Upon request by GRANTEES, THORO may decline to receive copies of any such submittals or portions thereof (e.g., data quality assurance packages, laboratory backup, etc.).

9.    This Agreement shall not be construed to create, either expressly or by implication, the relationship of agency or partnership between the parties. Neither EPA, the GRANTEES nor THORO are authorized by virtue of this Agreement to act on behalf of the other in any manner relating to the subject matter of this Agreement.

10.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

11.    This Agreement embodies the entire agreement of GRANTEES and THORO with respect to the subject matter hereof. This Agreement supersedes any prior agreements between the parties concerning the subject matter hereof and upon execution the parties agree that all prior agreements are deemed terminated. This Agreement may be modified only by a written agreement signed by THORO and GRANTEES and authorized by EPA.

12.    Nothing in this Agreement shall waive or prejudice any right, claim, cause of action or defense that THORO or EPA, and the GRANTEES otherwise have under law. No Grantee shall suffer or permit any mechanic's lien, or other lien, to be filed against the Property, or any part thereof, by reason of work, labor, services or materials supplied.

13.    EPA and the GRANTEES shall exercise their rights hereunder in accordance with all applicable federal and state laws and in strict compliance with the terms of this Agreement.

14.    It is THORO's position that THORO does not concur with the EPA's or GRANTEES' response actions planned to be performed at or on the Property as identified in the work plans provided to THORO. THORO also does not agree that it is a liable party under CERCLA Section 107 for the release of hazardous substances at the Site and does not agree that the response actions proposed are necessary or appropriate under CERCLA or RCRA to address any alleged imminent and substantial endangerment that EPA believes may exist at the Site. It is THORO's position that EPA's investigations demonstrate that the contamination observed on the Property has migrated onto the Property from an adjacent property and is unrelated to any identified use or alleged release of hazardous substances by THORO on the Property. THORO reserves all of its rights to reimbursement and recovery available to it under CERCLA or any other authority for all damages including without limitation any lost use of the Property and for any expenses incurred by THORO at the Property arising from or related to EPA and the GRANTEES' CERCLA activities including the Activities of EPA's representatives, EPA's contractors, EPA's PRP Group representatives and their respective contractors.

15.    The statements made in Paragraph 14 (above) are THORO's statements only, and do not reflect the views of EPA or the GRANTEES. EPA and GRANTEES reserve their rights to challenge any of the contentions and statements made by THORO in Paragraph 14.

16.    THORO realizes that the Activities by GRANTEES are undertaken pursuant to their response and enforcement responsibilities under the Comprehensive Environmental Response, Compensation, and Liability Act as amended (Superfund). 42 U.S.C. § 9601 *et seq.* In giving its consent, THORO is responding to the April 27, 2007 Compliance Order issued by the State of Colorado; EPA's Complaint filed on or about November 24, 2004 ("Complaint"); and EPA's letters, voice mail messages and emails to THORO and its counsel regarding access to the Property. THORO is not relying upon any additional representations, claims, threats or promises, either oral or written, made by EPA and the GRANTEES, other than the understandings specified in this Agreement.

17.    The undersigned representatives certify that he or she is authorized to enter into the terms and conditions of this Agreement and to execute and bind legally the parties to this document.

EXECUTED AND AGREED BY THE PARTIES HERETO:

THORO PRODUCTS COMPANY

_Richard E. Newman_      DATE: _6/1/07_

By: _Richard E. Newman_

RFIP PRP AOC GROUP

_Mark Mathews_      DATE: _6/5/07_

By: _MARK MATHEWS_

CONSENT FOR ACCESS TO PROPERTY FOR TRACT 6

THORO PRODUCTS COMPANY

FIGURE 1-A



RFIP-596

MW-003

Proposed
Additional Well.

WEISCRAFT

See Figure 1-B

Truck Access
Corridor

TH-PZ-01

G-1

RCRA
Pad

TH-PZ-02

LOT-A
(UPRR)

AS Point/
SVE Well Corridor

LEGEND

⊕   GROUNDWATER MONITORING WELL LOCATION
      UNCONSOLIDATED DEPOSITS

⊕   GROUNDWATER MONITORING WELL LOCATION
      BEDROCK DEPOSITS

⊕   PIEZOMETER WELL LOCATION

☐   APPROXIMATE EXTENT OF AS/SVE SYSTEM

☐   APPROXIMATE EXTENT OF SVE ONLY

FIGURE 1-A

DELINEATION OF AREAS
DISCUSSED DURING 8-22-02 SITEWALK

30'   0   30'   60'

SCALE: 1" = 60'

CONSENT FOR ACCESS TO PROPERTY FOR TRACT 6

THORO PRODUCTS COMPANY

FIGURE 1-B



MW-013  ● MW-21

RFIP-596

UG-1

MW-003

PROPOSED
MW-RA-3

WEISCRAFT

TH-PZ-01

DG-1

RCRA
Pad

Pad

TH-PZ-02

LEGEND

● GROUNDWATER MONITORING WELL LOCATION
   UNCONSOLIDATED DEPOSITS

◑ GROUNDWATER MONITORING WELL LOCATION
   BEDROCK DEPOSITS

⊗ PIEZOMETER WELL LOCATION

◉ PROPOSED MONITORING WELL LOCATION
   NORTHING - 737,666 Ft, EASTING - 2,085,730 Ft
   COORDINATE SYSTEM: NAD 27,
   COLORADO STATE PLANES,
   CENTRAL ZONE, U.S. FEET

FIGURE 1-B

MW-RA-3 WELL LOCATION
AGREED UPON 6/4/07

N

30'   0   30'   60'
SCALE: 1" = 60'

M:\clients\EWSI\RFIP\Theor\2007\UW-RA-3-Proposed.dwg plotted: 06/05/2007

CONSENT FOR ACCESS TO PROPERTY FOR TRACT 6

THORO PRODUCTS COMPANY

ATTACHMENT A

ATTACHMENT A: AS/SVE TERMINATION AND SHUTDOWN CRITERIA

Introduction:

The selected Removal Action at the AERRCO/Thoro facilities at the RFIP site is source removal of VOCs through a combination of air sparging and soil vapor extraction (AS/SVE). At the RFIP site, numerical standards for source removal have not been established which would clearly define the termination and shutoff criteria for the AS/SVE system. The reasons for not establishing numerical standards for this removal action include the following: 1) groundwater itself is not a complete pathway for risk; 2) the lack of established standards for the indoor air pathway; and 3) the site specific conditions that present technical limitations to total removal of the VOCs in the subsurface. This attachment to the Statement of Work (SOW) lays out a general approach for reaching a decision to shut off the AS/SVE system.

Objectives:

The objective of source removal at the AERRCO/Thoro facility is to reduce the potential for and magnitude of VOC accumulation in future buildings and to reduce the magnitude of future VOC migration in soil vapor and groundwater. Removal of VOC sources may yield improvements to groundwater quality, however, restoration of groundwater quality beneath or downgradient of the Site is not the primary objective of this removal action. Due to the presence of residual occurrences of dense non-aqueous phase liquids (DNAPLs) combined with low permeability and the heterogeneous nature of the subsurface conditions, it is probably technically impracticable to remove all of the VOCs from the subsurface.

Purpose:

The purpose of the AS/SVE system is to remove as much of the VOCs from the suspected source areas as can be achieved in a manner that balances technical feasibility with cost-effectiveness. In the EE/CA, removal action alternatives are evaluated against three primary criteria - effectiveness, implementability, and cost. Technical feasibility requires close examination of the system design as well as the operational efficiency of the AS/SVE. Cost-effectiveness requires looking at the benefit of continuing AS/SVE operations in light of the costs being incurred. Balancing technical feasibility and cost-effectiveness without established numerical standards for guidance in reaching a decision for shutting off the system requires a unique and flexible approach. A number of factors must be evaluated in deciding to shut the AS/SVE system off as there is no single criteria that defines this balance between technical feasibility and cost-effectiveness.

Assumptions:

The following assumptions apply to the operation as well as the evaluation of the performance of the AS/SVE system:

1. AS/SVE will be installed in suspected source areas where VOC concentrations in

1

groundwater are 1,000 ug/l or greater and VOC concentrations in soil vapor are greater than 100 ug/l in air. In areas where the VOC concentrations exceed the threshold of 100 ug/l in air but the groundwater is less than the threshold of 1,000 ug/l, only SVE will be installed. For ease of discussion in this document, references to AS/SVE will also mean the areas where only SVE is implemented.

2. The evaluation and decision for shutting off the AS/SVE system for a specific source area will be independent of the evaluations of other specific source areas. This is because system performance will vary throughout the Site depending on subsurface conditions and VOC concentrations at each source area.

3. The mass of VOCs removed during the initial operation of the AS/SVE will be high, potentially ranging from pounds to tens of pounds per day.

4. The rate of VOC removal will be characterized by an exponentially decreasing curve where the rate of VOC removal versus time will approach a flat line i.e, an asymptotic condition.

5. As the rate of VOC removal decreases, the cost in terms of dollars per pound of VOCs removed will increase over time.

**Evaluation of System Performance:**

An evaluation of the performance of the AS/SVE system that balances technical feasibility and cost-effectiveness will consider the following factors listed in Table 1. The evaluation of the performance of the system will consider these factors in reaching a decision on the appropriate point to shut off the AS/SVE system at a specific source area. Not all of these factors must be satisfied to trigger a request for shutdown or the evaluation of modifications.

Table 1

| Shutdown Evaluation Factor | Anticipated Trend |
|---|---|
| The mass of VOCs removed during a specified period of time compared to the mass of VOCs removed during a baseline period of system operation | The mass removed during a specified time period will decrease over time and become a small percentage of the amount of baseline mass removed. |
| The rate of VOC removal during a specified period of time compared to the rate of VOC removal achieved during a baseline period of system operation. | The rate of VOC removal will decrease over time and become a small percentage of the baseline removal rate. |
| Evaluate the rate of change in the VOC removal rate and the magnitude of the VOC removal rate when asymptotic conditions have been reached. | The change in the VOC removal rate will approach a flat line (or zero), i.e., asymptotic conditions are reached. Although the removal rate will become asymptotic, the removal rate may be significant enough to continue operating the AS/SVE system. |
| The unit cost ($/lb) incurred for VOC removal | The cost to remove a pound of VOCs will increase over time as a constant operational cost is compared to decreasing mass removal. When this situation occurs, the cost-effectiveness of the specific AS/SVE system must be considered. |
| Rebound Evaluation | When the system is shutdown for a period of time and then re-started, if no substantial and sustained rebound of VOC removal is shown, then the conclusion that mass transfer is diffusion limited can be made. |
| Compare the amount of mass removed during a specified period of time to the cumulative mass removed | Mass removal over a period of time will become a small percentage of the cumulative mass removed. |

If the evaluation of these factors in considering the balance between technical feasibility and cost-effectiveness indicate that the effective and efficient removal of VOCs is no longer being achieved, termination of the AS/SVE system for a specific source area will be considered.

Operational Modifications:

Prior to termination of the AS/SVE system for specific source areas, an evaluation of operational modifications or enhancements will be conducted to determine that the observed decline in the system performance is due not to operational constraints but to limitations imposed by subsurface conditions. The types of operational modifications or enhancements that may be considered include but are not limited to the following:

- pulse air sparging
- switching from continuous vacuum to an intermittent application of vacuum or a lower vacuum;
- air recycling;

3

• other operational modifications that could re-establish efficient removal of VOCs.

These modifications would be evaluated as to their potential to increase the amount of VOCs removed relative to the total mass of VOCs previously removed or the rate of VOC removal relative to the initial rate of removal and/or decrease the cost per pound of VOCs removed. Such modifications will be developed as part of the design or operation phases of AS/SVE system implementation. Those modifications that are likely to remove significant amounts of additional VOC mass would be field tested and/or implemented.

Implementation of any operational modifications will require an evaluation of the "rebound" by assessing whether any increase in VOC concentrations that may be occurring, to assess whether it can be attributed to advective removal or is the result of a rate limited process such as diffusion. Measures to determine the cause of the rebound will be defined as part of the design or operational phases of the AS/SVE system. If the rebound is determined to be the result of rate-limited processes, rebound will not justify continued operation of the AS/SVE system for a specific source area.

When the rate (or amount) of VOC removal again decreases to low levels, a request for termination of the AS/SVE system for a specific source area will be submitted by the Respondents to EPA          . Continued operation of the AS/SVE system at that point would not be cost effective.

AS/SVE will not be applied to areas of on-site or off-site groundwater contamination resulting from migration of VOCs from the source areas. It is possible that VOCs from upgradient source areas will migrate into downgradient AS/SVE treatment areas. If it is determined that mass removal at the down gradient AS/SVE system is the result of contaminant migration, continued operation of the AS/SVE system at the downgradient source areas would not be required.

4

CONSENT FOR ACCESS TO PROPERTY FOR TRACT 6

THORO PRODUCTS COMPANY

ATTACHMENT B

## ATTACHMENT B
### Thoro RCRA Concrete Pad
### Decontamination Procedures
### RFIP Removal Acton

## INTRODUCTION

This document sets forth the procedures to be taken to comply with paragraph 7.D. of the "Consent for Access to Property for Tract 6, Thoro Products Company" (Consent for Access). Specifically, the procedures described below will be implemented to ensure, to the extent practicable, no residual contamination from the Superfund removal action (air sparge/ soil vapor extraction) activities (the Activities) is left on the surface of the concrete pad formerly used to store RCRA hazardous waste (RCRA pad) following performance of the Activities.

## PROCEDURES

In the event that a release or suspected release has occurred on the RCRA pad as a result of construction, operation or dismantling of the air sparge/ soil vapor extraction (AS/SVE) system or related appurtenances or activities, the following procedures will be implemented:

1. Upon discovery of the release or potential release, appropriate actions will immediately be taken to prevent further releases and/or to contain any ongoing or prior release;

2. Once an ongoing release has been stopped and/or contained, appropriate actions will be taken to remove any material that was or may have been released onto the RCRA pad. Actions that may be taken could include pumping and containerization of liquids or sweeping or other physical removal of released material, scrubbing with soap, pressure washing or steam cleaning the affected area, or other actions as appropriate given the nature and type of release or suspected release;

3. Upon completion of AS/SVE operation and removal of all equipment, wells and other appurtenances associated with the AS/SVE system in accordance with paragraphs 7. B. and 7.C. of the Consent for Access, the areas subject to a release(s) or suspected releases(s) or, if more practical, all areas of the RCRA pad subject to AS/SVE operations will be pressure washed. The water generated during pressure washing will be collected and containerized. In addition to collection of samples, if any, that may be necessary to determine appropriate disposal methods for the water, a sample of this water will be submitted for analysis of volatile organic compounds (VOCs) by SW-846 method 8260B or the then current version of this method to verify that VOCs are not present on the

surface of the RCRA pad as a result of construction, operation and decommissioning of the AS/SVE system; and

4. Upon completion of AS/SVE operation and removal of equipment, wells and other appurtenances associated with the AS/SVE system in accordance with paragraphs 7. B. and 7.C. of the Consent for Access, a letter report will be prepared describing any releases and if any releases have occurred or are suspected to have occurred, the actions taken to address such releases. This letter report may include some or all of the following items as appropriate: (1) summary of the nature of any releases or suspected releases or the absence of any releases or suspected releases, (2) the location and known or estimated extent of any areas on the RCRA pad affected by any releases or suspected releases, (3) measures taken to contain any releases and to remove the released material and clean the RCRA pad, and (4) the results of any sampling performed in response to the release(s), if any or as part of the decontamination activities conducted upon completion of the AS/SVE activities. This letter report will be prepared and certified by a licensed professional engineer.

# APPENDIX C

**ENVIRONMENTAL USE COVENANT FOR TRACT 6**
**ENVIRONMENTAL USE COVENANT FOR TRACT 7**

**This Property Is Subject to Environmental Covenants and Use Restrictions**

<u>ENVIRONMENTAL COVENANT</u>
<u>AND</u>
<u>USE RESTRICTIONS</u>

<u>TRACT 6</u>

**WHEREAS**, Thoro Products Company (also referred to herein as "Thoro" or "Owner") represents and warrants that at the time of execution of this Environmental Covenant and Use Restrictions ("Covenant") it is the current Owner of the Property and has the authority to execute and record this Covenant; and

**WHEREAS**, pursuant to the Rocky Flats Industrial Park Removal Action Memoranda issued by the U.S. Environmental Protection Agency ("EPA") on August 22, 1988 and September 25, 2000, the Property is subject to a removal action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. CERCLA"); and

**WHEREAS**, to resolve certain claims between the United States of America and Thoro in Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*; Thoro recorded an interim environmental covenant on the Property; and

**WHEREAS**, as provided in the _____ 2009 Consent Decree ("Consent Decree") entered into between the United States of America and Thoro in Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*, Thoro agreed to record this Covenant; and

**WHEREAS**, the purpose of this Covenant is to (1) satisfy Thoro's obligations under the Consent Decree and (2) intended to meet the criteria for removal actions identified in CERCLA § 101(23), 42 U.S.C. § 9601(23), and 40 CFR § 300.1 et seq. by prohibiting certain uses of the Property until levels of hazardous substances (volatile organic compounds) in the soil and groundwater at the Property have dropped to levels protective of any use of the Property or until it can be shown that the Property can be developed in a way that will not adversely affect human health or the environment; and

**WHEREAS**, Thoro maintains that it is not responsible for the release of hazardous substances from the Site and that any hazardous substances located on or under the Property are not attributable to any past or present activities on the Property. Thoro does not agree that the Removal Action proposed is necessary or appropriate under CERCLA to address any alleged imminent and substantial endangerment that EPA believes may exist at the Property.

**WHEREAS**, EPA and Owner agree that entry of this Covenant is not intended to modify the application of federal, state or local environmental laws otherwise applicable to the Property.

**NOW, THEREFORE**, Owner hereby agrees, covenants and declares that the Property shall hereinafter be bound by, held, sold, and conveyed subject to the following use restrictions, which shall run with the Property and be binding on the Owner and all parties having any right, title or interest in the Property, or any part thereof, their heirs, successors and assigns, and any persons using the Property, as described herein, for the benefit of the Owner and the EPA. As used in this Covenant, the term Owner means Thoro Products Company or the record Owner of the Property and, if any, any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent domain.

## DEFINITIONS

"**CERCLA**" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"**Consent Decree**" shall mean the _____ 2009 Consent Decree entered into between the United States of America and Thoro in Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*

"**EPA**" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

"**Excavation**" shall mean any disturbance of or boring into the surface or the subsurface of the Property at a depth of more than eighteen (18) inches below the ground surface that results in movement or removal of any soils or groundwater and/or any installation, disturbance or removal of Structures located on the Property at a depth of more than eighteen (18) inches below the ground surface. Notwithstanding the immediate preceding sentence, as a one-time accommodation to the current owner (Thoro) the eighteen (18) inch limitation for the Excavation of Structures described above shall not apply to the removal of the concrete footers associated with the former concrete drum storage pad Structure, which may extend deeper than eighteen (18) inches below ground surface, provided that any excavation of pad materials, including any soil or groundwater at any depth excavated in association with the pad during this one-time exclusion, is conducted in compliance with RCRA requirements and applicable federal, state and local laws.

"**Owner**" shall mean the record owner of the Property and any party having any right, title or interest in the Property, or any part thereof, their successors and assigns, and any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent domain.

"**Property**" shall mean the land, improvements, and appurtenances located at tract 6 – Rocky Flats Industrial District Filing No. _____, according to the recorded plat thereof, in unincorporated Jefferson County, Colorado, the legal description of which is attached hereto as Exhibit A.

"**Removal Action**" shall mean, as applicable, the CERCLA removal actions referenced in the following documents: (1) the Site Data Characterization and Interpretive Report dated July 16, 1999; (2) the Baseline Ecological and Human Health Risk Assessment dated February 2000; (3) the September 25, 2000 Action Memoranda for the AERRCO and Thoro facilities and for the Great Western Inorganics, Inc. facility at the Rocky Flats Industrial Park Site and any addenda or amendments thereto ("Action Memoranda"); (4) the Engineering Evaluation/Cost Analysis for the Removal Actions dated June 12, 2000 and any addenda or amendments thereto ("EE/CA"); (5) the Administrative Order on Consent for Removal Action dated September 29, 2000 and any addenda or amendments thereto; (6) the Final Basis of Design Report dated April 12, 2004 and any addenda or amendments thereto; (7) March 26, 2002 Consent Decree between EPA and Great Western Inorganics, Inc. and any addenda or amendments thereto; and (8) the Consent for Access to Property, Thoro Products Company, executed on June 5, 2007.

"**Site**" shall mean the Rocky Flats Industrial Park Superfund site located along Colorado Highway 72 in the 17,000 block approximately 2 miles east of the intersection of Colorado Highways 93 and 72, in Section 23, Township 2N, Range 70W. The Site is generally depicted more clearly on the map included in Exhibit B attached hereto and includes the contiguous adjacent areas where hazardous substances have come to be located.

"**Structures**" shall include, but not be limited to, any buildings, concrete footings, foundations, loading docks, retaining walls, pads, sumps, surface impoundments, storm water retention ponds, catch basins, tanks or other structures currently present on, or which may be installed on, the Property.

"**Thoro**" shall mean Thoro Products Company and its successors, and assigns.

## USE RESTRICTIONS

Prohibition on Residential Use: Owner shall not allow, permit or construct any residential use, including, but not limited to any day care facilities, single family or multi-family residential Structures at the Property.

Prohibition on Use of Ground Water and Well Construction: Owner shall make no use of the groundwater under the Property or allow such waters to be developed for any purpose, except for those wells used for groundwater monitoring purposes or as otherwise provided in the Removal Action documents. Owner shall not dig, bore or drill any well for the production of water or from which water is produced on the Property,

except for those wells used for groundwater monitoring purposes or as otherwise provided in the Removal Action documents.

Prohibition on Use of Surface Water: Except as authorized by state and federal law, including environmental laws, Owner shall not develop any surface water source on the Property for the production of water except for monitoring purposes or as otherwise provided in the Removal Action documents.

Foundation Venting or Vapor Barrier: Owner shall not permit the construction of any new Structures intended for human use (e.g., an office space) on the Property without installation of a foundation venting system, such as that described at Section 4.1.2.5.3 of EPA's Engineering Evaluation/Cost Analysis dated June 12, 2000, or other vapor mitigation system acceptable to a State of Colorado licensed Professional Engineer.

Protection of AS/SVE System: Owner shall not disturb, damage or remove the Air Sparge/Soil Vapor Extraction (AS/SVE) system on Tract 6 of the Property, during the time such AS/SVE system is on the Property and before the system is removed by EPA or its designee.

Excavations: All groundwater and/or soil from an Excavation shall be characterized for the following purposes: (i) ensuring compliance with the standards set by the Occupational Safety and Health Administration (OSHA) under regulation 1910.120, including the use of appropriate personal protective equipment ("PPE"), if required, to minimize worker exposure to contaminants; and (ii) making a hazardous waste determination to determine whether the groundwater or soil must be handled, managed and disposed as a regulated hazardous waste under applicable federal, state and local laws. If the hazardous waste determination concludes that the groundwater and/or soils are regulated hazardous waste: (i) such soils or groundwater shall be disposed as hazardous waste under applicable federal, state and local laws; and (ii) the appropriate PPE shall be worn by workers as required by OSHA 1910.120.

Entry and Inspections: The EPA and its authorized representatives shall have the right of entry to the Property at reasonable times with prior notice for the purpose of determining compliance with the terms of this Covenant and to determine whether this Covenant is protective of human health and the environment. Nothing in this Covenant shall modify or impair any other authority the EPA may otherwise have to enter and inspect the Property.

## MODIFICATION

This Covenant runs with the land and is perpetual, unless modified or terminated pursuant to this paragraph. Owner may request that the EPA approve a modification or termination of the Covenant. The request shall contain information showing that the proposed modification or termination shall, if implemented, ensure protection of human health and the environment. The EPA shall review any submitted information, and may request additional information. If the EPA determines that the proposal to modify or

terminate the Covenant will ensure protection of human health and the environment, the EPA shall approve the proposed modification. No modification or termination of this Covenant shall be effective unless the EPA has approved such modification or termination in writing. Information to support a request for modification or termination may include one or more of the following:

(a) a proposal to perform additional remedial work;

(b) new information regarding the risks to human health or the environment posed by the residual contamination from the past release of hazardous materials or substances from the Site;

(c) information demonstrating that residual contamination has diminished;

(d) information demonstrating that an engineered feature or Structure is no longer necessary;

(e) information demonstrating that the proposed modification would not adversely impact the remedy and is protective of human health and the environment from the past release of hazardous materials or substances from the Site; or

(f) other appropriate supporting information.

## APPEALS

Any determination by the EPA, made after receiving a request to modify or terminate this Environmental Covenant, shall be subject to appeal in accordance with the terms of the Consent Decree.

## CONVEYANCE/SUBSEQUENT OWNERS

Notice of Conveyance: Owner shall notify the EPA at least fifteen (15) days in advance of any proposed grant, transfer or conveyance of any interest in any or all of the Property. Owner agrees to include in any instrument conveying any interest in any portion of the Property or granting a right to use the Property, including but not limited to deeds, leases, licenses and mortgages, a notice which is substantially the following form:

NOTICE:

THE INTEREST CONVEYED HEREBY IS SUBJECT TO INSTITUTIONAL CONTROLS, DATED _____, 2009, RECORDED IN THE PUBLIC LAND RECORDS OF JEFFERSON COUNTY ON _____, 2009, IN BOOK _____, PAGE _____. GRANTEE OF THIS PROPERTY AGREES TO BE SUBJECT TO THE INSTITUTIONAL CONTROLS PROVISIONS OF THE CONSENT DECREE IN Civil Acton No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*, AND ACKNOWLEDGES THAT THESE INSTITUTIONAL CONTROLS MAY OTHERWISE BE ENFORCED AGAINST THE GRANTEE BY THE UNITED STATES AS A THIRD PARTY BENEFICIARY.

Within thirty (30) days of the date any such instrument of conveyance is executed, Owner must provide the EPA with a certified true copy of said instrument with the recording reference in the public land records.

## NOTIFICATION FOR PROPOSED CONSTRUCTION OR LAND USE

Owner shall notify the EPA simultaneously when submitting any application to a state or local government for a change in land use.

## THIRD PARTY BENEFICIARIES

(a) The Owner of the Property is a third party beneficiary with the right to enforce the provisions of this Covenant, and any named beneficiaries of this Covenant may file suit in district court to enjoin actual or threatened violations of this Covenant.

(b) The United States is a third party beneficiary with the right to enforce the provisions of this Covenant as a condition of settlement of Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.* and the Consent Decree entered therein, and any named beneficiaries of this Covenant may file suit in district court to enjoin actual or threatened violations of this Covenant.

## MISCELLANEOUS

No Liability:  Neither this Covenant nor any of the terms, recitals, provisions or statements contained herein shall be construed as an admission of liability by Owner in any proceeding, action or dispute under any federal, state or local law or regulation or under any common law theory.  The United States does not acquire any liability under State law by virtue of accepting this Covenant.

Owners Compliance Certification:  Upon written request by the EPA, Owner shall execute and return a certification detailing Owner's compliance and any lack of compliance with the terms of this Covenant.

Notices:

(a) Any document or communication sent to the United States under this Covenant shall be sent or directed to:

Remedial Project Manager
Rocky Flats Industrial Park Superfund Site
Mail Code: 8EPR-SR
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202-1129

(b) Any document or communication sent to Thoro Products Company under this Covenant shall be sent or directed to:

Christopher J. Sutton
Counsel for Thoro Products Company
c/o Perkins Coie, LLP
1899 Wynkoop Street
Denver, Colorado 80202

And

Thoro Products Company
c/o Richard Newman, President
6611 West 58th Place
Arvada, Colorado 80003

Either party shall have the right to designate by notice, in the manner set forth above, a different address to which notices are to be delivered or mailed.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Thoro Products Company, a Colorado Corporation, has caused this instrument to be executed this ___day of _____2009.

Thoro Products Company


By: _____.
        Richard E. Newman, President

STATE OF COLORADO    )
                         ) ss.
COUNTY OF _____)

The foregoing instrument was acknowledged before me this ___day of _____2009, _____ by Richard E. Newman as President of Thoro Products company on behalf of the corporation.

        Witness my hand and official seal.

        My commission expires _____.


        _____,

        Notary Public
        Address:

**This Property Is Subject to Environmental Covenants and Use Restrictions**

## ENVIRONMENTAL COVENANT
## AND
## USE RESTRICTIONS

### TRACT 7

**WHEREAS,** Thoro Products Company (also referred to herein as "Thoro" or "Owner") represents and warrants that at the time of execution of this Environmental Covenant and Use Restrictions ("Covenant") it is the current Owner of the Property and has the authority to execute and record this Covenant; and

**WHEREAS,** pursuant to the Rocky Flats Industrial Park Removal Action Memoranda issued by the U.S. Environmental Protection Agency ("EPA") on August 22, 1988 and September 25, 2000, the Property is subject to a removal action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq. CERCLA"); and

**WHEREAS,** as provided in the _____ 2009 Consent Decree ("Consent Decree") entered into between the United States of America and Thoro in Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*, Thoro agreed to record this Covenant; and

**WHEREAS,** the purpose of this Covenant is to (1) satisfy Thoro's obligations under the Consent Decree and (2) intended to meet the criteria for removal actions identified in CERCLA § 101(23), 42 U.S.C. § 9601(23), and 40 CFR § 300.1 et seq. by prohibiting certain uses of the Property until levels of hazardous substances (volatile organic compounds) in the soil and groundwater at the Property have dropped to levels protective of any use of the Property or until it can be shown that the Property can be developed in a way that will not adversely affect human health or the environment; and

**WHEREAS,** Thoro maintains that it is not responsible for the release of hazardous substances from the Site and that any hazardous substances located on or under the Property are not attributable to any past or present activities on the Property. Thoro does not agree that the Removal Action proposed is necessary or appropriate under CERCLA to address any alleged imminent and substantial endangerment that EPA believes may exist at the Property.

**WHEREAS,** EPA and Owner agree that entry of this Covenant is not intended to modify the application of federal, state or local environmental laws otherwise applicable to the Property.

**NOW, THEREFORE,** Owner hereby agrees, covenants and declares that the Property shall hereinafter be bound by, held, sold, and conveyed subject to the following use

restrictions, which shall run with the Property and be binding on the Owner and all parties having any right, title or interest in the Property, or any part thereof, their heirs, successors and assigns, and any persons using the Property, as described herein, for the benefit of the Owner and the EPA. As used in this Covenant, the term Owner means Thoro Products Company or the record Owner of the Property and, if any, any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent domain.

## DEFINITIONS

"**CERCLA**" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"**Consent Decree**" shall mean the _____ 2009 Consent Decree entered into between the United States of America and Thoro in Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.*

"**EPA**" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

"**Excavation**" shall mean any disturbance of or boring into the surface or the subsurface on the Property at a depth of more than eighteen (18) inches below the ground surface that results in movement or removal of any soils or groundwater and/or any installation, disturbance or removal of Structures located on the Property at a depth of more than eighteen (18) inches below the ground surface.

"**Owner**" shall mean the record owner of the Property and any party having any right, title or interest in the Property, or any part thereof, their successors and assigns, and any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent domain.

"**Property**" shall mean the land, improvements, and appurtenances located at tract 7 – Rocky Flats Industrial District Filing No. _____, according to the recorded plat thereof, in unincorporated Jefferson County, Colorado, the legal description of which is attached hereto as Exhibit B.

"**Removal Action**" shall mean, as applicable, the CERCLA removal actions referenced in the following documents: (1) the Site Data Characterization and Interpretive Report dated July 16, 1999; (2) the Baseline Ecological and Human Health Risk Assessment dated February 2000; (3) the September 25, 2000 Action Memoranda for the AERRCO and Thoro facilities and for the Great Western Inorganics, Inc. facility at the Rocky Flats Industrial Park Site and any addenda or amendments thereto ("Action Memoranda"); (4) the Engineering Evaluation/Cost Analysis for the Removal Actions dated June 12, 2000 and any addenda or amendments thereto ("EE/CA"); (5) the

Administrative Order on Consent for Removal Action dated September 29, 2000 and any addenda or amendments thereto; (6) the Final Basis of Design Report dated April 12, 2004 and any addenda or amendments thereto; (7) March 26, 2002 Consent Decree between EPA and Great Western Inorganics, Inc. and any addenda or amendments thereto; and (8) the Consent for Access to Property, Thoro Products Company executed on June 5, 2007.

"**Site**" shall mean the Rocky Flats Industrial Park Superfund site located along Colorado Highway 72 in the 17,000 block approximately 2 miles east of the intersection of Colorado Highways 93 and 72, in Section 23, Township 2N, Range 70W. The Site is generally depicted more clearly on the map included in Exhibit C attached hereto and includes the contiguous adjacent areas where hazardous substances have come to be located.

"**Structures**" shall include, but not be limited to, any buildings, concrete footings, foundations, loading docks, retaining walls, pads, sumps, surface impoundments, storm water retention ponds, catch basins, tanks or other structures currently present on, or which may be installed on, the Property.

"**Thoro**" shall mean Thoro Products Company and its successors, and assigns.

## USE RESTRICTIONS

Prohibition on Residential Use: Owner shall not allow, permit or construct any residential use, including, but not limited to any day care facilities, single family or multi-family residential Structures at the Property.

Prohibition on Use of Ground Water and Well Construction: Owner shall make no use of the groundwater under the Property or allow such waters to be developed for any purpose, except for those wells used for groundwater monitoring purposes or as otherwise provided in the Removal Action documents. Owner shall not dig, bore or drill any well for the production of water or from which water is produced on the Property, except for those wells used for groundwater monitoring purposes or as otherwise provided in the Removal Action documents.

Prohibition on Use of Surface Water: Except as authorized by state and federal law, including environmental laws, Owner shall not develop any surface water source on the Property for the production of water except for monitoring purposes or as otherwise provided in the Removal Action documents.

Foundation Venting or Vapor Barrier: Owner shall not permit the construction of any new Structures intended for human use (e.g., an office space) on the Property without installation of a foundation venting system, such as that described at Section 4.1.2.5.3 of EPA's Engineering Evaluation/Cost Analysis dated June 12, 2000, or other vapor mitigation system acceptable to a State of Colorado licensed Professional Engineer.

<u>Excavations</u>: All groundwater and/or soil from an Excavation shall be characterized for the following purposes: (i) ensuring compliance with the standards set by the Occupational Safety and Health Administration (OSHA) under regulation 1910.120, including the use of appropriate personal protective equipment ("PPE"), if required, to minimize worker exposure to contaminants; and (ii) making a hazardous waste determination to determine whether the groundwater or soil must be handled, managed and disposed as a regulated hazardous waste under applicable federal, state and local laws. If the hazardous waste determination concludes that the groundwater and/or soils are regulated hazardous waste: (i) such soils or groundwater shall be disposed as hazardous waste under applicable federal, state and local laws; and (ii) the appropriate PPE shall be worn by workers as required by OSHA 1910.120.

<u>Entry and Inspections</u>: The EPA and its authorized representatives shall have the right of entry to the Property at reasonable times with prior notice for the purpose of determining compliance with the terms of this Covenant and to determine whether this Covenant is protective of human health and the environment. Nothing in this Covenant shall modify or impair any other authority the EPA may otherwise have to enter and inspect the Property.

## MODIFICATION

This Covenant runs with the land and is perpetual, unless modified or terminated pursuant to this paragraph. Owner may request that the EPA approve a modification or termination of the Covenant. The request shall contain information showing that the proposed modification or termination shall, if implemented, ensure protection of human health and the environment. The EPA shall review any submitted information, and may request additional information. If the EPA determines that the proposal to modify or terminate the Covenant will ensure protection of human health and the environment, the EPA shall approve the proposed modification. No modification or termination of this Covenant shall be effective unless the EPA has approved such modification or termination in writing. Information to support a request for modification or termination may include one or more of the following:

(a) a proposal to perform additional remedial work;

(b) new information regarding the risks to human health or the environment posed by the residual contamination from the past release of hazardous materials or substances from the Site;

(c) information demonstrating that residual contamination has diminished;

(d) information demonstrating that an engineered feature or Structure is no longer necessary;

(e) information demonstrating that the proposed modification would not adversely impact the remedy and is protective of human health and the environment from the past release of hazardous materials or substances from the Site; or

(f) other appropriate supporting information.

## APPEALS

Any determination by the EPA, made after receiving a request to modify or terminate this Environmental Covenant, shall be subject to appeal in accordance with the terms of the Consent Decree.

## CONVEYANCE/SUBSEQUENT OWNERS

Notice of Conveyance: Owner shall notify the EPA at least fifteen (15) days in advance of any proposed grant, transfer or conveyance of any interest in any or all of the Property. Owner agrees to include in any instrument conveying any interest in any portion of the Property or granting a right to use the Property, including but not limited to deeds, leases, licenses and mortgages, a notice which is substantially the following form:

NOTICE:

THE INTEREST CONVEYED HEREBY IS SUBJECT TO INSTITUTIONAL CONTROLS, DATED _____, 2009, RECORDED IN THE PUBLIC LAND RECORDS OF JEFFERSON COUNTY ON _____, 2009, IN BOOK _____, PAGE _____. GRANTEE OF THIS PROPERTY AGREES TO BE SUBJECT TO THE INSTITUTIONAL CONTROLS PROVISIONS OF THE CONSENT DECREE IN Civil Acton No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.,* AND ACKNOWLEDGES THAT THESE INSTITUTIONAL CONTROLS MAY OTHERWISE BE ENFORCED AGAINST THE GRANTEE BY THE UNITED STATES AS A THIRD PARTY BENEFICIARY.

Within thirty (30) days of the date any such instrument of conveyance is executed, Owner must provide the EPA with a certified true copy of said instrument with the recording reference in the public land records.

## NOTIFICATION FOR PROPOSED CONSTRUCTION OR LAND USE

Owner shall notify the EPA simultaneously when submitting any application to a state or local government for a change in land use.

## THIRD PARTY BENEFICIARIES

(a) The Owner of the Property is a third party beneficiary with the right to enforce the provisions of this Covenant, and any named beneficiaries of this Covenant may file suit in district court to enjoin actual or threatened violations of this Covenant.

(b) The United States is a third party beneficiary with the right to enforce the provisions of this Covenant as a condition of settlement of Civil Action No. 04-cv-02330-RPM, *United States of America v. Thoro Products Company v. Great Western Inorganics, Inc.* and the Consent Decree entered therein, and any named beneficiaries of this Covenant may file suit in district court to enjoin actual or threatened violations of this Covenant.

## MISCELLANEOUS

No Liability: Neither this Covenant nor any of the terms, recitals, provisions or statements contained herein shall be construed as an admission of liability by Owner in any proceeding, action or dispute under any federal, state or local law or regulation or under any common law theory. The United States does not acquire any liability under State law by virtue of accepting this Covenant.

Owners Compliance Certification: Upon written request by the EPA, Owner shall execute and return a certification detailing Owner's compliance and any lack of compliance with the terms of this Covenant.

Notices:

(a) Any document or communication sent to the United States under this Covenant shall be sent or directed to:

Remedial Project Manager
Rocky Flats Industrial Park Superfund Site
Mail Code: 8EPR-SR
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202-1129

(b) Any document or communication sent to Thoro Products Company under this Covenant shall be sent or directed to:

Christopher J. Sutton
Counsel for Thoro Products Company
c/o Perkins Coie, LLP
1899 Wynkoop Street
Denver, Colorado 80202

and

Thoro Products Company
c/o Richard Newman, President
6611 West 58th Place
Arvada, Colorado 80003

Either party shall have the right to designate by notice, in the manner set forth above, a different address to which notices are to be delivered or mailed.

IN WITNESS WHEREOF, Thoro Products Company, a Colorado Corporation, has caused this instrument to be executed this ___day of _____2009.

Thoro Products Company


By: _____.
       Richard E. Newman, President

STATE OF COLORADO    )
                      ) ss.
COUNTY OF _____)

The foregoing instrument was acknowledged before me this ___day of _____2009, _____ by Richard E. Newman as President of Thoro Products company on behalf of the corporation.

             Witness my hand and official seal.

             My commission expires _____.


                    _____,
             Notary Public
             Address: